IN RE OPENING OF A NEW ROAD ALONG THE BEACH FROM KAKAAKO TO WAIKIKI, HONOLULU, OAHU.

No. 1863.

Argued May 10, 1929.          Decided May 17, 1929.

Perry, C. J., Banks, J., and Circuit Judge Steadman in place of Parsons, J., absent.

OPINION OF THE COURT BY PERRY, C. J.

By this proceeding is sought a review of an order made by a circuit judge in 1928, granting a motion of the Territory of Hawaii to set aside on the ground of invalidity a so-called "final order of condemnation" entered in the same cause in 1914, relating to land desired by the government in 1889 and 1890 for purposes of a roadway.

Under date of April 8, 1889, the minister of the interior of the Kingdom of Hawaii addressed a letter to the chief justice of this court, reciting that it had been made to appear to him "that a new road should be opened along the beach from Kakaako to Waikiki in the district of Honolulu in accordance with a survey hereto annexed" and requesting "that you will select a list of twenty-four names from among the legal voters" of the district of Honolulu and "direct the marshal to draw therefrom a jury of six persons to decide on the propriety of the measure proposed, in accordance with the provisions of section 184 of the Civil Code as amended by Chapter XXXII of the Session Laws of 1872." On the following day the chief justice, reciting the contents of the letter just received by him from the minister of the interior, by letter informed the marshal of the names of the twenty-four legal voters of the district whom he had selected and directed him to draw from the twenty-four names a jury of six persons "to decide on the propriety of the measure

proposed." In pursuance of the direction of the chief justice the marshal, on April 9, 1889, drew from the list of twenty-four the names of six persons to serve as a jury in the matter. Under date of April 11, 1889, the six jurors certified as follows: "We, the undersigned, a jury duly drawn to decide upon the propriety of opening a new road along the beach from Kakaako to Waikiki, in the district of Honolulu, Island of Oahu, hereby certify that on the 11th day of April, 1889, we examined the location of such proposed improvement and after due deliberation do hereby decide that the said proposed improvement, as laid down on a plat herewith, is a proper one and recommend that the same be carried out." On April 12, 1889, the minister of the interior by letter informed the road supervisor of the district of Honolulu of the decision of the jury "approving of opening a new road along the beach from Kakaako to Waikiki" and of the purpose of the minister of the interior "to take action in accordance with such decision" and directed him "in accordance with Sec. 2 of Chap. XXXII Ls. 1872, to post notices along the line of such proposed work, stating the work proposed and instructing the parties interested to file their claims with W. Foster Esq., police justice of Honolulu." In pursuance of this request the road supervisor posted along the route of the proposed road notices containing the information that "a jury duly drawn in accordance with law, having decided that a new road along the beach from Kakaako to Waikiki" should be opened "in accordance with the survey to such decision attached, such improvement has been duly determined upon" and calling upon "all parties interested in or affected by such proposed work" to file their claims with Police Justice Foster on or before a day named. The notices posted further stated that "a map showing the proposed improvement can be seen at the interior office."

Victoria Ward, an owner of land along the route of the proposed highway, did not file a claim for damages with the police judge. Correspondence between her and the minister of the interior shows that she protested against the opening of a road over and across her land of Kukuluaeo along the beach and offered to consent to the opening of a road across her land at a point further mauka, which would leave her beach frontage intact.

On or about March 26, 1890, the minister of the interior appointed Messrs. W. Austin Whiting, C. Bolte and W. F. Allen as commissioners to assess the value of the private property taken for the roadway and the damages likely to be sustained by the owners of the land. In a letter of March 29, 1890, addressed to the commissioners, the minister of the interior said that it was "the intention of the government to take for road purposes all land between the upper or 100-foot line as shown by the stakes, and high water mark, the staked or so-called 100-foot line being at an average of 100 feet from high water mark." The commissioners appointed a time and place for the hearing of claims, visited the locality in question, took testimony and written evidence and on April 2, 1890, rendered a decision relating to the damages suffered by Mrs. Ward. They awarded her the sum of $4675 as damages and held that certain houses on the land should remain her property and should be by her removed and that the government should "keep open by proper culverts the waterways for the salt ponds" which had been customarily supplied with water from the ocean. The land taken was in the decision of the commissioners described as follows: "Location: premises in Honolulu, Oahu, part of Kukuluaeo, L. C. A. No. 1944, along beach between Kewalo and Kaakaukukui, taking all land between upper or 100-foot line (shown by stakes and maps) and high water mark: length about 3300 feet. Area about

9 3/10 acres." At the hearing before the commissioners a "map showing proposed new road" was admitted in evidence and marked "Exhibit H." This map is still in existence and was admitted in evidence in the case at bar.

On April 9, 1890, Mrs. Ward appealed to the supreme court from the decision of the three commissioners. In February, 1891, further efforts were made by Mrs. Ward to have the location of the proposed road across her property altered so that the roadway would be situated further mauka and away from the beach front. On February 14, 15 and 17, 1896, the appeal of Mrs. Ward from the decision of the commissioners was heard before a jury of twelve in the circuit court of the first circuit. Mrs. Ward appeared, was represented by two attorneys and was fully heard. At the conclusion of the trial the jury returned a verdict to the effect that Mrs. Ward should recover of the government the sum of $7000 as damages for the taking of the land, together with interest at 9% from April 2, 1890, "less $50.00 per year for use of the Kula land." Both sides noted exceptions to the verdict on the ground that it was contrary to the law and the evidence and gave notice of a motion for a new trial. No further proceedings were had under the title of the court and cause until the entry, on March 4, 1914, of the "final order of condemnation" above referred to. Thereafter no further proceedings were had until the filing of the motion, in 1928, also above mentioned, to set aside the "final order of condemnation."

The statutes in effect in 1889, 1890 and the years following until the rendition of the verdict in 1896 were as follows: it was provided (Sec. 184, C. C. 1859, as amended by L. 1872, ch. 32,—Cp. L. 1884, Sec. 182) that "upon the request of fifty or more tax payers of any district to the minister of the interior, that a new road, highway, or street be opened, or that an old road, highway, or street

be shut up or widened or altered, or if it shall be made to appear to the minister of the interior in any other way, that any road, highway or street should be opened, widened or otherwise altered, the said minister of the interior shall request any judge of a court of record to select a list of twenty-four names from among the legal voters of the district in which the improvement or alteration is contemplated, from which such judge shall direct the marshal of the Kingdom, or the sheriff of the island in which the improvement is contemplated, to draw a jury of six persons to decide on the propriety of the measure proposed, and the decision of such jury or a majority of them shall be certified immediately to the minister of the interior, who is hereby authorized and empowered to take action in accordance with such decision of such jury." It was further provided (Sec. 185, C. C. 1859, as amended by the Act of 1872,—Cp. L. 1884, Sec. 182) that "in laying out, closing or widening any road or highway, respect shall be had to the private vested rights of property which any individual may have in the land affected by any such proposed work. It shall be the duty of the road supervisor immediately after such proposed work shall be determined upon to cause notices to be posted along the line of such proposed new road, street or highway proposed to be closed, opened or widened or altered, advertising the fact and calling upon all parties interested therein to bring forward their claims to the nearest circuit judge, police or district justice, and it shall be the duty of such judge or justice to forward a list of all such claims to the minister of the interior." And further (Sec. 186, C. C. 1859, as amended by the Act of 1872, Cp. L. 1884, Sec. 182) that "upon the receipt of such claims, if the minister of the interior and the several claimants cannot agree upon the amount to be paid to such claimants, the said minister shall appoint three disinterested per-

sons as commissioners, or may request any judge of a court of record to cause a jury to be summoned and drawn in like manner as in the first section provided, to assess the value of the private property, or such damage likely to be sustained by the owner or occupier of any land to be taken for the proposed improvement, whose decision or the decision of a majority of them shall determine the price to be given by the government for such private property or for such damages as the case may be, and such commissioners or jury shall send a certified copy of their decision to the minister of the interior and another to the claimant." And further (Cp. L. 1884, Sec. 187) that "upon delivery of said decision to the owner of the land, the property assessed shall revert to the government for the public use intended, without further conveyance; and the holder of such decision shall present the same to the minister of the interior for adjustment, pursuant to the provisions of the next succeeding section."

By the Act of July 8, 1870, it was provided that "any person aggrieved by the determination of said commission, may appeal therefrom to the supreme court; upon which appeal like proceedings shall be had as in appeals from district justices." By section 4 of the Act of 1872 the section last quoted was made applicable also "to the widening or altering of any road, street or highway, as in the previous sections of this Act set forth."

The proceedings had from 1889 to 1896 inclusive under the title of this cause would seem to have been strictly in accordance with the authorization and the requirements of the above quoted statutes then in force. The minutes of the trial of February, 1896, recite that it was "agreed by counsel" that all of the "proceedings for the condemnation of this land up to this date were done according to law and are legal and valid." Upon the present appeal no attack is made by any one upon the validity of the

proceedings had prior to and through the trial before the jury. It is clear from a reading of the statutes then in force that the only tribunal which had the power "to decide on the propriety of the measure proposed," that is to say, to decide upon the propriety of the proposed condemnation and on the location and extent of the proposed roadway, was the jury of six persons provided for by section 184 of the Civil Code and of the Compiled Laws. The three commissioners who later took some part in the proceedings were entirely without authority to decide on the propriety or desirability of the opening of the roadway or on its location or extent. They did not attempt to consider or to render any decision upon this latter question. They confined themselves, as by law they were required to do, to a consideration of the question of the amount of the damages to which Mrs. Ward was entitled by reason of the taking of her land and their only decision was to award her the damages to which they believed she was entitled. The only question which Mrs. Ward's appeal carried to the trial jury of twelve men was that of the amount of the damages to which she was entitled by reason of the taking of the land, which taking was complete long before the trial commenced. Her appeal to the jury could not possibly operate to open up for review by the jury of twelve a question which the three commissioners had not attempted to decide and which it was beyond their jurisdiction to consider or determine. The jury of twelve likewise confined itself to a consideration of the question of the amount of the damages which should be awarded to the claimant. The charge which the presiding judge delivered to that jury clearly shows that that one question, and none other, was being submitted to the jury. There was no request by either party for any instructions submitting to the jury the question of the propriety of the opening of the proposed road or of the

location or extent of the proposed roadway. Assuming it to be conceivable that under some circumstances the circuit court of the first circuit in 1914 would have had jurisdiction to enter a judgment upon the verdict which was rendered by the jury of twelve, no such judgment was entered in 1914. The so-called "final order of condemnation" did not purport to be a judgment for the recovery by Mrs. Ward from the government of the damages named in the verdict. It recites, on the contrary, that the damages awarded had been paid in full by the government and had been received and receipted for by Mrs. Ward,—thus clearly showing that there was in 1928 no necessity whatever or justification for a judgment for the recovery of money. The "final order of condemnation" merely decreed "that the Territory of Hawaii, the successor in interest of the aforesaid Republic of Hawaii, is the owner in fee simple absolute for the public purpose hereinabove named of the following described property, to-wit," describing by metes and bounds a strip of land. There were no other operative words in the decree or order. There were no apt words that could possibly be construed as a judgment for the recovery of money. Neither at its date (March 4, 1914), nor at any other time, did the circuit court have in that cause upon motion jurisdiction to settle the boundaries of the piece of land which had been taken for the purposes of a roadway. The appeal from the decision of the three commissioners to the circuit court with a jury of twelve did not give it that jurisdiction. Under the statutes above quoted the jury of six persons alone had the power "to decide on the propriety of the measure proposed" and when the three commissioners on April 2, 1890, served a certified copy of their decision upon Mrs. Ward, the title to the land (roadway) in the location approved by the jury of six became vested in the government. "Upon delivery of said decision" of the three com-

missioners "to the owner of the land, the property assessed shall revert to the government for the public use intended, without further conveyance." Cp. L. 1884, Sec. 187.

It is immaterial whether the description contained in the order of 1914 corresponds in all respects with the description presented to and approved by the jury of six or differs radically from it. In either event the circuit court was without jurisdiction to attempt to fix in the manner attempted the boundaries of the land which had been long theretofore duly taken and the order .entered was void and of no effect.

The order of Judge Massee, made in 1928, setting aside the so-called "final order of condemnation" of 1914 is affirmed.

*J. V. Hodgson* (*Peters & O'Brien* on the briefs) for plaintiff in error.

*C. N. Tavares,* Second Deputy Attorney General (*H. R. Hewitt,* Attorney General, with him on the brief), for the Territory.